Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7331 | **DATE** | August 7, 2001 |
| **CASE TITLE** | Tango Music v. Deadquick Music, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants Defries' motion to dismiss [16-1] and defendant Deadquick Music, Inc.'s motion to dismiss [21-1] are granted in part and denied in part. Plaintiff is granted to leave to file an amended Counts I and II by September 14, 2001. A status is set for October 17, 2001 at 9:30 a.m. See attached for details. ENTER MEMORANDUM OPINION.

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| X | Notices MAILED by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 08 2001 date docketed | 27 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to | | FILED FOR DOCKETING | |
| KAM | courtroom deputy's initials | 01 AUG -8 PM 3:54 Date/time received in central Clerk's Office | date mailed notice KAM mailing deputy initials | |

(Reserved for use by the Court)

99-7331.011-MEV                                          August 7, 2001

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TANGO MUSIC, L.L.C., | ) |
| Plaintiff, | ) |
| v. | ) No. 99 C 7331 |
| DEADQUICK MUSIC, INC., MAINMAN SAAG, TONY DEFRIES, MAXINE MARSHALL, and RYKODISC USA, | ) |
| Defendants. | ) |

DOCKETED
AUG 0 9 2001

## MEMORANDUM OPINION

Before the court are two motions to dismiss brought by defendants Tony Defries, Maxine Marshall, and Deadquick Music, Inc. For the reasons explained below, the motions are granted in part and denied in part.

## BACKGROUND

The complaint alleges that in 1994, Griffin Music, Inc. (Griffin) sought to obtain from Mainman SAAG the right to manufacture and distribute certain recordings of David Bowie in North and South America. Neale Parker, the president of Griffin, negotiated with defendants Maxine Marshall (Marshall) and Tony Defries (Defries). Marshall and Defries represented to Parker that Mainman SAAG would transfer its rights to the recordings to

Mainman's subsidiary or related entity, Deadquick Music Inc. ("Deadquick"), and that Deadquick would license the recordings to Griffin. Pursuant to the License Agreement, Griffin paid Deadquick approximately $217,000, and in March of 1995, Griffin manufactured and began promoting and distributing the Bowie recordings. In April of 1995, Griffin received a cease and desist letter from Rykodisc USA, which asserted that Rykodisc owned the rights to manufacture and distribute the Bowie recordings in North America. Griffin also received cease and desist letters from counsel for David Bowie in 1995. Griffin ceased manufacturing, promoting, and distributing the recordings, but incurred costs and expenses in excess of $171,000.

Griffin filed suit in the United Kingdom in 1995, but the suit was stayed so that it could be filed in this court. Within a few months of filing in this court, the case was dismissed without prejudice and subject to reinstatement. Griffin then assigned its rights and claims under the contract to Hugh Chambers, who subsequently assigned his rights and claims under the License Agreement to the plaintiff, Tango Music, LLC ("Tango"). Tango filed this suit in November of 1999, alleging fraud, willful and wanton conduct, civil conspiracy, and breach of license agreement, the alter-ego status of Deadquick, and seeking a declaratory judgment.

By April 6, 2000, the plaintiff had not served any of the defendants, and this court ordered service to take place within thirty days. The plaintiff served Marshall and Defries in October of 2000. On December 13, 2000, we granted the plaintiff an additional ninety days to serve the three remaining defendants. Deadquick was served in March of 2001, and we dismissed the other two defendants, Mainman SAAG and Rykodisc USA, for lack of service.

On March 15, 2001, defendants Marshall and Defries moved for dismissal on the basis that the plaintiff's Amended Complaint failed to allege the citizenship of the parties and thus, diversity jurisdiction was inadequately alleged. The defendants also argue that dismissal is warranted because service was not timely. Deadquick moved for dismissal on April 3, 2001. The plaintiff failed to respond to the motions by the required dates, and the defendants moved this court to grant their unopposed motions to dismiss. Counsel for the plaintiff explained that the deadline was missed because he had been preoccupied with his daughter's need for surgery. The plaintiff sought an extension of time to file a response and leave to file its Second Amended Complaint, which it attached to its motion. We granted the plaintiff an extension to

June 15, 2001 to respond to the defendants' motions to dismiss, but it failed to do so.[1]

## ANALYSIS

As an initial matter, we grant the plaintiff leave to file it's Second Amended Complaint. On a motion to dismiss, we take as true the allegations in the complaint.

I. **Diversity Jurisdiction**

The plaintiff alleges that this court has subject matter jurisdiction over the action under 28 U.S.C. § 1332, the diversity jurisdiction statute. For purposes of diversity jurisdiction, the citizenship of a limited liability company is the citizenship of its members. Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir. 1998). Tango Music is a limited liability company, whose members include Hugh Chambers and Karen Chambers. The Second Amended Complaint alleges that Karen Chambers is a citizen of New Jersey, and Hugh Chambers is a citizen of the United Kingdom. As to the defendants, Marshall is a citizen of the United Kingdom, Defries is either a citizen of Virginia or the United Kingdom, and Deadquick is a citizen of New York. Thus, the domestic parties are diverse, but the alien parties are citizens of the same foreign country.

---

[1] Our courtroom deputy telephoned both Eric Filkin and Douglas Tibble, counsel for the plaintiff, on July 17th and 18th and left messages. Counsel failed to return the calls.

- 5 -

Under the diversity statute, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy .... is between ... (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties." 28 U.S.C. § 1332(a)(3). The first question before the court is whether diversity jurisdiction is present where the domestic citizens on opposite sides of the action are diverse but the alien parties on opposite sides of the action are citizens of the same foreign country. In <u>Dresser Indus., Inc. v. Underwriters at Lloyd's of London</u>, 106 F.3d 494 (3rd Cir. 1997), the Third Circuit provided guidance on this point, offering the following hypothetical:

> "Consider a case brought in New York state court where a citizen of New York and a citizen of Lithuania sue a Texan and a codefendant. If the codefendant is a New Yorker, the Texan's fear of bias will be allayed - for in order to penalize the Texan the judge will have to harm one of his or her neighbors. On the other hand, if the codefendant is a Lithuanian, the nervous Texan will be little comforted - he or she has no reason to think that the judge will be any less willing to penalize a Texan and a Lithuanian than to penalize a Texan alone. For diversity purposes, an alien is an alien is an alien."

<u>Id.</u> at 500 (quoting from <u>Bank of N.Y. v. Bank of Am.</u>, 861 F. Supp. 225, 229 (S.D.N.Y. 1994)). In other words, the presence of aliens from the same country on opposite sides of the litigation does nothing to eliminate fears that the out-of-state party will receive less favorable treatment.

The Seventh Circuit has not squarely addressed the issue, but held in a case involving domestic citizens of diverse states that a defendant need not state the specific citizenship of alien parties in a notice of removal alleging diversity jurisdiction. Karazanos v. Madison Two Assoc., 147 F.3d 624, 626 (7th Cir. 1998). The Seventh Circuit observed that § 1332(a)(3) "does not say anything about specifying from which foreign state an alien hails, and so on its face it does not appear to demand more than an allegation that someone is 'a foreign citizen or subject.'" Although that case addressed a slightly different situation -- the alien parties were present on only one side of the case -- its reading of § 1332(a)(3)'s requirements is instructive.

We believe that the citizenship of alien parties is not relevant to diversity jurisdiction where the domestic parties on opposite sides of the case are diverse.[2] See Zenith Elec. Corp. v. Kimball Intern. Mfg., Inc., 114 F. Supp.2d 764, 771 (N.D. Ill. 2000) (holding that diversity jurisdiction existed where the domestic parties on opposite sides of the cases were diverse even

---

[2] A caveat to this proposition is that "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." 28 U.S.C. § 1332(a). However, the party seeking federal jurisdiction is not obligated to state that the alien parties are not also permanent residents. Karazanos, 147 F.3d at 628 (noting that such a requirement would impose burdens far exceeding the benefits and leaving it to the challenger to allege otherwise). There is no allegation that any of the defendants are domiciled in the plaintiff's State of New Jersey.

though citizens of Mexico were also present on both sides of the case). Therefore, the presence of aliens on opposite sides of an action, even if they are citizens of the same foreign country, does not destroy diversity jurisdiction where the domestic parties are diverse. Id. We have jurisdiction over the case.

## II. **Delays In Serving the Defendants**

The next question is whether the case should be dismissed because the plaintiff served the defendants eleven and sixteen months after filing this law suit. The defendants argue that the plaintiff's tardy service was unreasonable and without good cause, and that the defendants have been prejudiced as a result.

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).

Fed. R. of Civ. Procedure 4(m). Defendant Marshall was served abroad in October of 2000. Although service took place more than 120 days after the complaint was filed, the 120 day period only applies to domestic service. Of the other two defendants,

Deadquick was served in Delaware in March of 2001, and it is unknown where Defries was served in October of 2000.

Although service was late, Rule 4(m) clearly provides that the court may extend the time period for serving defendants. Where good cause for failing to effect service within 120 days is shown, the court <u>must</u> extend the time for service. <u>Panaras v. Liquid Carbonic Indus. Corp.</u>, 94 F.3d 338, 340 (7th Cir. 1996). But even if good cause does not exist, "the court may, in its discretion, either dismiss the action without prejudice or direct that service be effected within a specified time." <u>Id.</u> This court exercised its discretion to allow more time for service on December 13, 2000.[3] All three defendants were served by the time the court directed.[4]

In addition, the defendants have shown no prejudice from the tardy service. The defendants claim they have been prejudiced

---

[3] We frankly cannot recall the precise reasons for granting the plaintiff extra time to serve the defendants. It may be because, as defendants argue, the limitations period may have run and dismissal would have barred refiling. It may also have been that the plaintiff had difficulty locating some of the defendants; for example, Defries is described as a resident of Switzerland in the caption of the complaint, but as a resident of the State of Virginia in the body of the complaint. In addition, it also appears that the plaintiff may have had some difficulty serving the foreign defendants.

[4] Deadquick, Marshall, and Defries are represented by the same attorneys from the law firm Altheimer and Gray. Defense counsel appeared at the December 13th hearing, but did not interpose any objection to the extension of time for service. Defense counsel does not state when Deadquick retained Altheimer and Gray to represent it, but in view of the fact that Marshall and Defries are allegedly officers, directors, and/or agents of Deadquick, we think it is likely that defense counsel had already been retained by Deadquick by the December 13th hearing. If so, the failure to object at that time weighs against dismissal.

because documents were lost and an important witness is no longer available due to the delay in service. This appears contrary to fact. According to an affidavit from Marshall, the documents were lost or purged either in 1997 or 1999. See Def.'s Ex. G, ¶¶ 6-9. The witness, David Bayendor, left Deadquick's employ in 1996 or 1997. Id. at ¶ 10. But this lawsuit was filed in November of 1999; at the earliest, service was due was in March of 2000. The relevant documents and witness disappeared long before that date, and therefore, the loss could not have been related to the plaintiff's failure to effect service within 120 days.

We also view with skepticism the defendants' further claim that they may be time-barred from filing a counter-claim against David Bowie or Rykodisc USA due to tardy service. If the defendants were unaware of the possibility that the plaintiff would sue them and the plaintiff's failure to effect service promptly caused them to lose their own right to sue third parties, prejudice would be apparent. But that is not the case here. Marshall and Defries were sued in the United Kingdom on this very matter in 1996, along with Mainman SAAG. Defs.' ex. A. When that suit was stayed, all three consented to jurisdiction in this court. Defs.' ex. B. The complaint in that case specifically discussed the role of Deadquick. Defs.' ex. A. All three of the defendants, therefore, were on notice that evidence pertaining to the License

Agreement at issue might be needed in the future. In addition, they had the opportunity at that time to evaluate all claims they might have against third parties. They do not state why tardy service in this case prevented them from initiating their own suit against David Bowie or Rykodisc USA prior to the expiration of the limitation period. Cf. Gordon v. Hunt, 116 F.R.D. 313, 323-24 (S.D.N.Y.), aff'd, 835 F.2d 452 (2nd Cir. 1987) (rejecting the defendant's claim of prejudice due to tardy service where defendant's reason for failing to file claims within the limitations period was unconvincing). The defendants' failure to preserve all of the relevant evidence also tends to undermine their claim that they intended to sue third parties.

We are disinclined to penalize the plaintiff with dismissal of the action solely because of counsel's tardiness, particularly where the defendants were served before our last extension expired, the defendants have been on notice of the plaintiff's claims against them for several years, and the defendants have failed to demonstrate prejudice from the tardy service. See Scott v. Guarantee Reserve Life Ins. Co., 95 C 6622, 1998 WL 177954 at *4 (N.D. Ill. April 7, 1998) (considering whether the defendant suffered prejudice). It is also possible (although not altogether clear) that the statute of limitations would bar the plaintiff from re-filing this action. See Panras, 94 F.3d at 341 (reversing

dismissal for untimely service where the district court did not consider that the limitations period had run). Finally, it appears there were obstacles to the plaintiff obtaining speedy service. See infra note 3. For these reasons, we also decline to dismiss on the basis of Illinois Supreme Court Rule 103(b).[5]

III. **Failure to State a Claim**

A. **Failure to Plead Assignee Status Specifically**

The defendants argue that the complaint must be dismissed because the plaintiff failed to adequately plead that Tango is an assignee of Griffin. According to the defendants, the plaintiff must plead how and when it acquired title from Chambers, and how and when Chambers acquired title from Griffin. The defendants cite two Illinois cases for this proposition, and cite a Supreme Court case from 1928 which states that these pleading requirements apply

---

[5] In federal cases based on diversity jurisdiction, the federal court applies state service of process rules if they are an integral part of the state statute of limitations. Hinkle v. Henderson, 135 F.3d 521, 522 n. 1 (7th Cir. 1998). Illinois Supreme Court Rule 103(b) is phrased in precatory rather than mandatory terms, stating:

> If the plaintiff fails to exercise reasonable diligence to obtain service on a defendant, the action as to that defendant may be dismissed without prejudice, with the right to refile if the statute of limitation has not run. The dismissal may be made on the application of any defendant or on the court's own motion.

Unlike the circumstances in Hinkle, the defendants here were not deprived of the time or opportunity to investigate the basis of the complaint while the evidence and facts were fresh. See id. at 524 (the defendant only learned of the plaintiff's law suit more than nine years after the alleged negligence occurred).

in federal court, as well. See <u>N.G. Taylor Co. v. Anderson</u>, 275 U.S. 431, 437-38 (1928). We disagree.

> The manner and pleading in the federal courts are governed by the Federal Rules of Civil Procedure regardless of the source of substantive law to be applied in the particular action.... Since the Supreme Court's decision in <u>Hanna v. Plumer</u>, [380 U.S. 460 (1965),] it can no longer be doubted that the rules regarding the standard of specificity to be applied to federal pleading, the pleadings allowed in the federal courts, the form of the pleadings, the special requirements for pleading certain matters, the allocation of the burden of pleadings, and the signing of pleadings, all are governed by the federal rules and not by the practice of the courts in the state in which the federal court happens to be sitting.

5 Charles Alan Wright, et al., <u>Federal Practice and Procedure</u> § 1204 at 82 (2d ed. 1990). The defendants have not explained what federal rule requires the plaintiffs to make specific allegations as to how and when they acquired their rights as assignees of Griffin, nor have they cited any federal cases decided after 1937 in support of this proposition.

We decline to dismiss the complaint on this basis.

B.  **Count I - Fraud**

The defendants further argue that the fraud claim should be dismissed because it was not pled with particularity under Federal Rule of Civil Procedure 9(b):

> To meet the particularity requirements of Rule 9(b), a complaint must specify the identity of the person making the misrepresentation, the time, place, and content of

>   the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.

Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990) (citation omitted); see also Ackerman v. Northwestern Mutual Life Ins., Co., 172 F.3d 467, 469 (7th Cir. 1999) (stating that the plaintiff must plead the who, what, when, where, and how of the alleged fraud). Here, the plaintiff alleges that Marshall and Defries concealed from Griffin that Mainman had previously licensed the Bowie recordings to Rykodisc USA. In fact, Mainman, Marshall, and Defries represented to Griffin that Mainman possessed the rights to license the Bowie recordings. To further their scheme, Mainman, Marshall, and Defries incorporated Deadquick as a shell corporation in 1994 in order to avoid its obligations with Rykodisc and to license rights in the recordings to Griffin. In order to induce the plaintiff to enter into the License Agreement, Mainman, Marshall, and Defries concealed Rykodisc's interest, and also concealed that any license to manufacture and distribute Bowie's recordings required Bowie's consent.

The general nature of the alleged fraud is clear, but the complaint sets forth almost no particulars. Although we may assume that Parker acted on Griffin's behalf, the there is no statement as to who, specifically, made any of the alleged misrepresentations to Parker. Instead, the allegations lump Mainman, Marshall, and

Defries together as a group. For example, the complaint does not state who in particular told Parker that Mainman possessed the right to license the Bowie recordings. In cases involving multiple defendants, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." <u>Vicom, Inc. v. Harbridge Merchant Serv., Inc.</u>, 20 F.3d 771, 778 (7th Cir. 1994) (internal quotations omitted); <u>see also</u> <u>Sears</u>, 912 F.2d at 893. Moreover, the actors in this drama are located in at least three countries, but there is no mention of where the alleged fraud occurred, or how it was communicated to Griffin. There is also no specific time alleged: the only time-frame that the Second Amended Complaint offers is the year 1994. Therefore, we find that the plaintiff has failed to meet the particularity requirements of Rule 9(b) and dismiss Count I.

C. **Count II: Wilful and Wanton Conduct**

Willful and wanton acts may be found where tortious conduct is found to have been intentional, but there is no separate and independent tort of "willful and wanton" misconduct. <u>Ziarko v. Soo Line R.R. Co.</u>, 641 N.E.2d 402, 406 (Ill. 1994) (citing <u>Morrow v. L.A. Goldschmidt Assoc., Inc.</u> 492 N.E.2d 181 (Ill. 1986)). Therefore, Count II is dismissed for failure to state a claim.

D.  **Count III: Civil Conspiracy**

The plaintiff alleges that Deadquick, Mainman, Marshall, and Defries acted in concert with each other to defraud Griffin of its money. As part of the conspiracy, the four made false representations to Griffin, omitted to state material facts and intentionally concealed these omissions of fact from Griffin, created Deadquick as a vehicle to further deceive Griffin, filed documents with the United States Copyright office, and committed "other illegal and improper conduct." 2nd Am. Compl. ¶ 68. According to the complaint, the individual defendants Marshall and Defries were acting on behalf of their principals, Mainman and Deadquick. Under Illinois law, an agent cannot conspire with his principal. Eisenhauer v. Stern, No. 99 C 6422, 2000 WL 136011 at *1 (N.D. Ill. Jan. 27, 2000) (citing Buckner v. Atlantic Plant Maintenance, Inc., 694 N.E.2d 565, 571 (Ill. 1998)). Moreover, "in precisely the same way that an agent cannot conspire with his or her own principal, no civil conspiracy can exist between or among the agents of such principal acting on its behalf." Id.

Moreover, a bare allegation of a conspiracy is not sufficient to survive a motion to dismiss. Ryan v. Mary Immaculate Queen Center, 188 F.3d 857, 860 (7th Cir. 1999). The stringent requirement of Rule 9(b) is appropriate where the gravamen of the plaintiff's conspiracy claim is based on fraud. Eisenhauer, 2000

WL 136011 at *2 (noting that "simply mouthing conclusory assertions of 'conspiracy' in the context of an asserted fraud will not suffice"); see also Herion v. Village of Bensenville, No. 00 C 1026, 2000 WL 1648937, at *7 (N.D. Ill. Nov. 1, 2000) (applying Rule 9(b) and citing numerous district court cases to do so).[6] Apart from failing to mention any specific time when the agreement was reached, the plaintiff's allegations once again lump all of the defendants together, without giving any notice of what the individuals' roles in the conspiracy were.

Therefore, we dismiss count III, as well.

### E. Count V: Alter ego status of Deadquick

The complaint alleges that Deadquick is the alter ego of Mainman, Marshall and Defries. The defendants argue that the plaintiff must plead that (1) Deadquick was so controlled and manipulated that it was a mere instrumentality of the defendants and (2) that recognition of a separate corporate identity would sanction a fraud or promote injustice. See Classic Fire & Marine Ins. Co. v. Illinois Ins. Exchange, No. 97 C 1256, 1997 WL 767290 at *5 (N.D. Ill. 1997) (setting forth the elements of a claim based on the alter ego doctrine).

---

[6] In Ryan, a civil rights case, the court applied the less stringent standard of Rule 8, but even there found that conspiracy was not adequately pled because the plaintiff failed to state when the agreement was reached, most of the terms of the agreement, and the defendants' roles in the conspiracy. Ryan, 188 F.3d at 860.

The complaint states that Deadquick was nothing more than a shell corporation which was undercapitalized and formed solely for the purpose of defrauding Griffin, inducing it to enter into the License Agreement, and concealing the License Agreement from Rykodisc. We believe this satisfies Rule 8's liberal pleading requirements. Cf. id. (dismissing claim where the plaintiff only alleged that the defendants were "affiliate members of the same corporate group, and [were] subject to common control and ownership").

The defendants further argue that the alter ego claim is not an independent claim but one dependent on a separate claim. But one claim does remain: Count IV for breach of license agreement. The defendant does not state why this claim should be dismissed or why it could not support the application of the alter ego doctrine. Therefore, we deny the defendants' motion to dismiss Count V.

## CONCLUSION

For the reasons stated above, we grant the defendants' motions to dismiss Counts I, II, and III against all defendants. Count VI is asserted only against Rykodisc, which was dismissed from the case in March of 2001. Thus, the only remaining counts are Counts IV, for breach of license agreement, and Count V, based on the alter ego doctrine.

We grant plaintiff leave to file amended counts I and II by September 14, 2001. We caution the plaintiff that any failure in the future to pursue this action diligently will result in a dismissal for want of prosecution. A status hearing is set for October 17, 2001 at 9:30 a.m.

DATE:   August 6, 2001

ENTER:  _____
        John F. Grady, United States District Judge